**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**AN ARTICLE OF DRUG, etc., et al., Defendants,**

**and**

**Palmer Chemical & Equipment Company, Inc., Claimant-Appellant.**

**No. 79–4077.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1980.

Decided Nov. 16, 1981.

Martin B. Brifman, Sacramento, Cal., for claimant-appellant.

Daniel J. Conway, Washington, D. C., argued, for plaintiff-appellee; William D. Coston, Washington, D. C., on brief.

Before BROWNING, Chief Judge, MERRILL, Circuit Judge, and HARRIS,* District Judge.

PER CURIAM:

Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, an animal drug may not be marketed in interstate commerce unless (1) the FDA has approved a new drug application pursuant to 21 U.S.C. § 360b, or (2) the drug is not a "new animal drug" because it is "generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof." 21 U.S.C. § 321(w)(1). If neither of these conditions is met, the drug is deemed an "adulterated"

---

* Honorable Oren Harris, Senior Judge, United States District Court for the Eastern and Western Districts of Arkansas, sitting by designation.

new animal drug, 21 U.S.C. § 351(a)(5), and, if found in interstate commerce, may be seized and condemned, 21 U.S.C. § 334. Shipment of such drugs may be enjoined. 21 U.S.C. §§ 331, 332(a).

Complaints for forfeiture were filed against the animal drugs Cap-Chur-Sol and U-Tha-Sol. Warrants were issued and quantities of both drugs were seized. Palmer Chemical & Equipment Co. intervened as claimant to defend the drugs against forfeiture. Palmer Chemical conceded no new drug application was on file. The sole issue for trial, therefore, was whether the drugs were generally recognized by experts as safe and effective.

The jury found the drugs subject to forfeiture. After the verdict but prior to entry of judgment, the government moved to amend the complaint to add a prayer for injunctive relief. The motion was granted. Judgment was entered condemning the seized drugs and enjoining Palmer Chemical from distributing further quantities in interstate commerce. This appeal followed. We affirm.

■ Palmer Chemical contends the warrants of seizure did not satisfy the requirements of the Fourth Amendment's warrant clause. We need not reach the issue since Palmer Chemical conceded at oral argument that the requirements for forfeiture were proven by evidence not tainted by the seizure. *United States v. One (1) 1971 Harley-Davidson Motorcycle*, 508 F.2d 351, 352 (9th Cir. 1974); *John Bacall Imports, Ltd. v. United States*, 412 F.2d 586, 588 (9th Cir. 1969).

■ Palmer Chemical objects to the district court's refusal to allow testimony regarding feral dog overpopulation, claiming this testimony would have shown the need for a drug to cure the problem. The only issue at trial was whether there was general recognition among qualified experts that the drugs seized were "safe and effective." Proof that *some* drug was needed to immobilize or destroy feral dogs was irrelevant to whether appellant's drugs are generally recognized to meet that need safely and effectively.

■ The district court properly rejected proposed instructions setting out standards for determining whether a drug was "safe" and "effective." It was not the jurors' function to determine whether in fact these drugs were safe and effective, but rather whether there was general recognition among experts that they were safe and effective. *See United States v. Naremco, Inc.*, 553 F.2d 1138 at 1142; *AMP, Inc. v. Gardner*, 389 F.2d 825, 831 (2d Cir. 1968). Instructions stating standards to be applied in determining whether in fact the drugs were safe and effective could only have confused and mislead the jury.

■ Palmer Chemical argues that Mr. Harold Palmer, president of Palmer Chemical, should have been allowed to testify as an expert witness. An expert testifying in a forfeiture proceeding must be qualified by "scientific training and experience to evaluate the safety and effectiveness of animal drugs." Mr. Palmer's resume listed no relevant educational qualifications. At most he could demonstrate some practical experience with the specific products involved in this case. We are not prepared to hold that the district court's refusal to permit Mr. Palmer to testify as an expert was "manifestly erroneous." *Reno-West Coast Distribution Co. v. Mead Corp.*, 613 F.2d 722, 726 (9th Cir. 1979); *see Simeon Management Corp. v. FTC*, 579 F.2d 1137, 1143 (9th Cir. 1978).

■ The district court allowed expert witnesses to read excerpts from treatises into evidence during the course of their testimony, but refused to admit the treatises themselves as exhibits, thus following the "learned treatise" exception to the hearsay rule, Fed.R.Evid. 803(18). Palmer Chemical contends, however, that the mere existence of the published studies and investigations regarding the drugs involved was probative, and therefore the treatises were not hearsay. The district court correctly rejected this argument. The treatises were relevant only as proof that their authors, as experts, believed the drugs were

safe and effective, or that the drugs were in fact safe and effective, thus providing a foundation for the testimony of other experts, *see Weinberger v. Hynson, Westcott & Dunning Inc.,* 412 U.S. 609, 629, 93 S.Ct. 2469, 2483, 37 L.Ed.2d 207 (1973). Either way, they were hearsay.

 Palmer Chemical argues the district court erred in denying a jury request either to review the treatises themselves, or to review the transcript of testimony about the treatises. The trial court has broad discretion as to materials that may go into a jury room, and its decision will be upheld unless there was an abuse of that discretion. Since the treatises themselves were excludable as hearsay, the court properly refused to allow the jury to inspect them. Although we have more trouble with the denial of the request to inspect the transcript, we conclude there was no abuse of discretion. A trial judge is in a better position than we to determine whether the beneficial effects from allowing the jury to review a part of the transcript outweigh the risk that the jury will give undue weight to that part of the evidence. *See United States v. Baxter,* 492 F.2d 150, 175 (9th Cir. 1973).

 In instructing the jury as to the quality of evidence necessary to establish the existence of the statutorily required general recognition among qualified experts that a drug is safe and effective the trial court followed the rigorous standard spelled out in *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 629–32, 93 S.Ct. 2469, 2483–2484, 37 L.Ed.2d 207 (1973) and, subsequently, in *United States v. Rutherford,* 442 U.S. 544, 549 and n.7, 99 S.Ct. 2470, 2474, 61 L.Ed.2d 68 (1979). Palmer Chemical argues that a more relaxed standard should be applied to the drugs involved here, apparently because their "primary purpose . . . is in the field of animal control." *But see United States v. Naremco, Inc.,* 553 F.2d 1138, 1142 n.5 (8th Cir. 1977). Palmer Chemical proposed instructions that would have advised the jury to take "into consideration the intended use and characteristics of the drug under investigation" in determining whether the proof met the requisite standard. Assuming it might be appropriate in some circumstances to depart from the strict standard dictated by *Hynson, Westcott & Dunning, Inc.,* this open-ended invitation to the jury to decide each case on an *ad hoc* basis was properly rejected.

 Palmer Chemical argues, citing *United States v. 47 Bottles, More or Less,* 320 F.2d 564, 573–74 (3d Cir. 1963), that the court abused its discretion by allowing the complaint to be amended to state a prayer for injunctive relief after the jury had returned its verdict. *47 Bottles* does not establish a *per se* rule. In that case, permitting a prayer for injunction to be filed after trial was held an abuse of discretion because the claimant was substantially prejudiced by the delay: "But for the brief oral argument on the motion, [the claimant] had no opportunity to raise and assert, through evidence or otherwise, equitable considerations by way of defense to an injunction or other possible mitigating factors." *Id.* at 573–74. In contrast, Palmer Chemical has demonstrated no prejudice from the late amendment of the prayer. The government indicated at an early stage in the litigation that a verdict in its favor would afford a basis for enjoining future shipments of the drugs. It is unlikely Palmer Chemical would have invested the time and money it did in this 7-year litigation thinking nothing more was at stake than the relatively few bottles of the drug that had been seized. Moreover, the parties had an opportunity to and did submit to the district court extensive briefs and affidavits as to the propriety of injunctive relief, and the matter was fully heard.

 Palmer Chemical argues the injunction is too broad. The decree prohibits introduction of the products into interstate commerce for any use. Palmer Chemical argues that since the jury was instructed the products were subject to forfeiture if any one of the uses prescribed on the labeling was not "generally recognized by experts as safe and effective," it is impossible to tell from the general verdict which use

or uses the jury found impermissible. But the evidence was also heard by the judge, and the judge, not the jury, determined the scope of the injunction based upon the judge's view of the facts established by the evidence. Moreover, an injunction may be framed to bar future violations that are likely to occur. *United States v. Diapulse Corp. of America*, 457 F.2d 25, 29 (2d Cir. 1972); and although there was ample evidence that no use of the drugs would be "generally recognized among experts to be safe and effective," Palmer Chemical continued to distribute the drugs after the jury's verdict.

Finally, Palmer Chemical contends the injunction is fatally flawed because it refers to the adulterated drugs by their trade names. Palmer Chemical argues that use of trade names without more results in ambiguity as to "whether this injunction prohibits the marketing of such drugs with a different name, different label, or different ingredients." This argument is specious. Distributing the same drugs under different names would not except them from the injunction. Nor would use of different labels, since the injunction broadly prohibits introduction of these products into interstate commerce for any use, without reference to labeling. We do not understand Palmer Chemical's argument that "[i]t is an open question as to whether this injunction prohibits the marketing of such drugs with ... different ingredients." If by "such drugs" Palmer Chemical means other products marketed under the same name but composed of different ingredients, it is clear the injunction does not apply.

AFFIRMED.