**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mark Kevin BINDER,**
**Defendant-Appellant.**

**No. 84–1249.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1985.

Decided Aug. 22, 1985.

Jon Rick Cooper, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Francisco Leon, Tucson, Ariz., for defendant-appellant.

Before WALLACE, HUG, and SKOPIL, Circuit Judges.

SKOPIL, Circuit Judge:

Mark Kevin Binder appeals from his conviction under Arizona statutes on four counts of child molestation and sexual conduct with a minor. Binder claims that the district court erred by: (1) admitting his post-indictment, post-arrest statements in violation of his rights under the fifth and sixth amendments and Federal Rule of Criminal Procedure 5(a); (2) determining that it was bound to apply the state statu-

tory minimum sentence; (3) allowing the jury to replay the complaining witnesses' videotaped testimony; and (4) admitting expert psychological and psychiatric testimony that the complaining witnesses could distinguish truth from falsehood. The district court had jurisdiction pursuant to 18 U.S.C. § 1152, which applies federal jurisdiction to crimes committed by non-Indians against Indians on Indian land. We reverse.

## FACTS AND PROCEEDINGS BELOW

Binder was convicted under Ariz.Rev. Stat.Ann. §§ 13–303.A.2, 13–1405 and 13–1410 (1984) of four counts of child molestation and sexual conduct with a minor. The complaining witnesses were a five and seven year-old sister and brother, Vanessa and Joseph Molina, who lived temporarily with Binder and his mother, a missionary who operated a crisis center. The prosecutor called seven witnesses in addition to the two children. A seventeen year-old girl, Lorraine Wichapa, who had resided as a ward with the Binders when she was sixteen, testified to alleged instances of sexual advances by Binder similar to those charged by the children. The prosecutor introduced this evidence to show that Binder's alleged molestation of the children was not accidental. Additional testimony, including evidence of affectionate letters between Binder and herself, cast doubt on Ms. Wichapa's credibility. Joseph Molina's teacher, who was also a neighbor of the Binders, was called to establish association between Binder and the children. Two psychologists and a psychiatrist testified concerning their examinations of the children after their complaints. A court counselor described her supervision of the children's placement with the Binders. Finally, an FBI agent described the investigation and arrest of Binder. None of the witnesses corroborated the specific allegations of the children regarding Binder's sexual advances.

Prior to trial, Binder moved to suppress post-arrest statements. He also opposed expert psychological and psychiatric trial testimony concerning the children's ability to distinguish truth from falsehood and reality from fantasy. The court denied the motion to suppress and allowed the expert testimony.

The trial court found the children competent to testify. To relieve their apprehensiveness about appearing in court, the trial judge and the parties agreed to substitute the children's videotaped testimony for their live testimony.

During deliberations, the jury requested permission to replay in the jury room the videotaped testimony of the children. After argument in chambers, the court granted the jury's request. The defendant was not present during the in-chambers proceedings or the playing of the tape. During the replay of the videotape, the jury asked to skip preliminary portions of the tape and to selectively replay the tape. The court granted the first request and denied the second. Both communications between the judge and jury occurred without consulting counsel or the defendant.

Several hours after the replay, the jury returned a verdict of guilty on all four counts. Binder was sentenced to four concurrent seven-year sentences, the presumptive minimum under Ariz.Rev.Stat.Ann. §§ 13–701.B.1, 13–1405.B, and 13–1410 (1984), with parole eligibility to be determined under federal law. This appeal followed.

## DISCUSSION

### 1. Admission of Binder's Statements.

#### A. Standard of Review

■ A determination that a defendant knowingly, intelligently, and voluntarily waived *Miranda* rights is reversible only if clearly erroneous. *United States v. Glover,* 596 F.2d 857, 865 (9th Cir.), cert. denied, 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979). The waiver of legal rights following *Miranda* warnings also constitutes a waiver of those rights under Federal Rule of Criminal Procedure 5. *United States v. Indian Boy X,* 565 F.2d 585, 591 (9th Cir.1977), cert. denied, 439

U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978).

## B. Merits

■ For a confession obtained during custodial interrogation to be admissible, any waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). A valid waiver depends upon the totality of the circumstances including the background, experience, and conduct of defendant. *North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). A signed waiver form is only one factor to be considered. *United States v. Nick*, 604 F.2d 1199, 1201 (9th Cir.1979); *United States v. Blocker*, 354 F.Supp. 1195, 1198 & n. 11 (D.D.C. 1973), aff'd, 509 F.2d 538 (D.C.Cir.1975) (mem.). The prosecutor has the burden of showing a valid waiver. There is a presumption against waiver. *North Carolina*, 441 U.S. at 373, 99 S.Ct. at 1757.

■ Although Binder signed a waiver of rights form and stated that he did not want a lawyer to be present so long as he could stop answering questions at any time, he cites several factors that militate against finding waiver: (1) his lack of knowledge of the indictment process; (2) testimony of one of the arresting agents that Binder could not read; (3) coercion by a federal agent who told Binder that if he were willing to discuss the case then the agent would make a good report to the court; (4) the failure of the court to find that the waiver was knowing and intelligent; and (5) the psychologist's testimony that Binder's general knowledge was very low; that he was "borderline defective;" and that since he was operating with a "functional learning disability" he may have trouble assimilating *Miranda* information.

The trial court considered all factors militating against a finding of waiver, including the arresting agents' and defendant's testimony that the defendant could not read. Binder was read his rights twice, signed a waiver form, and stated that his mother would retain an attorney. The court concluded that, under the totality of the circumstances, the defendant understood and validly waived his rights. There were sufficient facts demonstrating the elements necessary for a valid waiver. Under our clearly erroneous standard of review, the trial court's ruling will be upheld. See *United States v. Moreno-Lopez*, 466 F.2d 1205, 1206 (9th Cir.1972) (knowing, intelligent, and voluntary waiver found in case where nineteen-year-old had attended high school in America, spoke English well, and indicated before questioning that she understood her rights). But see *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir.1984) (waiver invalid when, after *Miranda* warnings, defendant invoked right to silence and refused to sign a waiver form but thereafter made incriminating statements).

■ Binder's claim that admission of his statements violated his rights under the sixth amendment and *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), is also without merit. The standard for waiver of the rights under the sixth amendment is the same as that for the fifth amendment, that is, voluntary, knowing, and intelligent. *United States v. Karr*, 742 F.2d 493, 495–96 (9th Cir.1984) (citing *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977)). The district court's finding of a valid waiver of Binder's fifth amendment rights applies equally to uphold a finding of waiver of his sixth amendment rights. See *Nick*, 604 F.2d at 1201 (valid waiver of right to counsel despite defendant's mild retardation, limited verbal skills, and testimony that he did not know what waiver form meant and that he signed it because he thought it would help him).

■ Binder's challenge to the admissibility of his statements under Federal Rule of Criminal Procedure 5 also fails. A waiver of *Miranda* rights constitutes a waiver of the rights under Rule 5. *Indian*

*Boy X,* 565 F.2d at 591. Even if there were a delay between arrest and arraignment, statements elicited during a delay are not inadmissible if (1) they are voluntary; (2) their weight is left to the jury; and (3) they occurred within a short time after arrest. 18 U.S.C. § 3501; *United States v. Manuel,* 706 F.2d 908, 913 & n. 11 (9th Cir.1983). The trial court's findings as to the voluntariness of Binder's statements were persuasive. These elements were met.

### 2. Sentencing.

#### A. Standard of Review

A trial court's statutory interpretation is reviewed de novo. *United States v. Launder,* 743 F.2d 686, 688–89 (9th Cir.1984). Sentencing which occurs within statutory parameters is reviewed for abuse of discretion. *United States v. Chiago,* 699 F.2d 1012, 1014 (9th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 171, 78 L.Ed.2d 154 (1983).

#### B. Merits

None of Binder's assignments of error concerning his sentence has merit. First, citing *United States v. Smith,* 574 F.2d 988 (9th Cir.), cert. denied, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978), Binder contends that, notwithstanding the Assimilative Crimes Act, 18 U.S.C. § 13, a federal sentencing court is not bound by a state mandatory minimum sentence. The Assimilative Crimes Act "subjects persons on federal lands to ... prosecution in federal court for violations of criminal statutes of the state in which the federal lands are located." *United States v. Kiliz,* 694 F.2d 628, 629 (9th Cir.1982) (citing *United States v. Press Publishing Co.,* 219 U.S. 1, 9–10, 31 S.Ct. 212, 213–14, 55 L.Ed. 65 (1911)). Under the Assimilative Crimes Act, the district court is obliged to impose the applicable state sentence, but must turn to the federal parole statute for resolving parole matters. *Smith,* 574 F.2d at 992. The district court complied with the statute. We find no authority to support Binder's contention that a federal sentencing court may reduce a state mandatory sentence.

Binder's contention that the district court erred in failing to sentence him pursuant to the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026 (FYCA) is without merit. The district court's decision not to sentence pursuant to the FYCA instead of other applicable law will not be disturbed absent an abuse of discretion. Cf. *Ralston v. Robinson,* 454 U.S. 201, 218, 102 S.Ct. 233, 244, 70 L.Ed.2d 345 (1981) (decision to sentence under FYCA reviewed for abuse of discretion). The district court concluded that this defendant was "not suitable for treatment under [the] Youth Corrections Act." There was no abuse of discretion.

### 3. Replay of Videotaped Testimony.

#### A. Standard of Review

A decision to replay testimony during jury deliberations will not be reversed absent an abuse of discretion. *United States v. Sims,* 719 F.2d 375, 379 (11th Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984).

#### B. Merits

Binder asserts that the replay of the videotape in the jury room during deliberations placed prejudicial emphasis on the complaining witnesses' testimony. We agree. The rereading of a witness' testimony is disfavored when it unduly emphasizes that testimony. See *United States v. Nolan,* 700 F.2d 479, 486 (9th Cir.), cert. denied, 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983). The determination to allow a rereading or rehearing of testimony must be based on particular facts and circumstances of the case. Undue emphasis of particular testimony should not be permitted.

Videotape testimony is unique. It enables the jury to observe the demeanor and to hear the testimony of the witness. It serves as the functional equivalent of a live witness. Since there was no physical

evidence, the only evidence of acts of molestation was presented through the children's videotaped testimony. The defendant denied any criminal conduct, asserting that the children were displeased with him and their charges against him were vindictive. Credibility became a crucial issue. Under these circumstances the videotaped testimony may have taken on great significance. Allowing the jury to see and hear the children's videotaped testimony a second time in the jury room during deliberations unduly emphasized their testimony.[1]

There are additional problems with the replay of the videotape. The judge granted the jury's request to replay the tape in an abridged fashion. Failure to replay the tape in its entirety may have placed an undue emphasis on the portion of the testimony revealed to the jury a second time.

The replay allowed the repetition of the government's case against Binder and may have taken on inappropriate significance in the jury's deliberations. The trial court abused its discretion in allowing the replay of the videotape during deliberations.

Binder also claims that (1) the replay was improper because the tape was never admitted into evidence; (2) the replay violated his due process right to respond to adverse testimony and his right under Federal Rule of Criminal Procedure 43(a) to be present "at every stage of the trial;"[2] (3) the deputy court clerk's presence in the jury room to operate the videotape equipment was prejudicial; and (4) the court erred in communicating with the jury, without consulting counsel, concerning the way the tape was to be reviewed.[3] Since the replay of the videotaped testimony was erroneous on other grounds, we do not reach these alternative grounds for reversal.

### 4. Admission of Expert Psychological and Psychiatric Testimony.

A. Standard of Review

The trial court's decision on the admissibility of expert testimony is reviewed for an abuse of discretion or "manifest error." *United States v. Marabelles*, 724 F.2d 1374, 1381 (9th Cir.1984). Errone-

---

**1.** Permitting the replay of the videotaped testimony in the jury room during deliberation was equivalent to allowing a live witness to testify a second time in the jury room. The same consideration and procedures should be employed for videotaped testimony as are employed in the rereading of live testimony. If it is appropriate to allow the jury to hear the testimony of a witness a second time at all, the preferred procedure would require the preparation of a transcript of videotaped testimony and a rereading of that testimony to the jury in the courtroom with all parties present.

The dissent is critical of our conclusion that the district judge abused his discretion in replaying the videotape. Specifically, the dissent finds little difference between allowing the replay of a videotape and allowing the replay of an audiotape. Unlike the dissent, we believe that allowing the replay of videotaped testimony, especially on the facts before us, was particularly prejudicial. Certainly it would have been impermissible to allow a live witness to enter the jury room to repeat his or her testimony. Often, videotapes are substitutes for live testimony and therefore distinct from audiotapes. We remain convinced that in this case the videotape was the functional equivalent of live testimony and not analogous to an audiotape.

**2.** Fed.R.Crim.P. 43(a) provides that "[t]he defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." See *United States v. Christopher*, 700 F.2d 1253, 1261–62 (9th Cir.) ("defendant is generally required to be present during all stages of the criminal process"), cert. denied, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983). Both the in-chambers discussion concerning the replay and the actual replay of the videotape outside the defendant's presence may have violated Rule 43(a), although defendant's failure to invoke the rule may have resulted in a waiver. *United States v. Gagnon*, 721 F.2d 672, 678 (9th Cir.1983) (no waiver of Rule 43 found), rev'd, —— U.S. ——, ——, 105 S.Ct. 1482, 1483, 84 L.Ed.2d 486 (1985) (waiver of Rule 43 found).

**3.** Binder claims that, had he been consulted, he would have objected to the selective replay. As we have already noted, the selective replay added to the prejudicial effect of the tape. Therefore, while we do not and need not rule on these additional issues specifically, we note that there may well have been a number of other problems with the videotape replay in this case. Thus, there are sound reasons for disfavoring this practice.

ous admission of expert testimony is reversible if the admission more probably than not materially affected the verdict. *See United States v. Valle-Valdez,* 554 F.2d 911, 916 (9th Cir.1977).

### B. Merits

 Expert witnesses may testify if they are qualified and if their testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *United States v. Amaral,* 488 F.2d 1148, 1152–53 (9th Cir.1973). Expert testimony should not be permitted if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury. *Id.* at 1153 (expert testimony on the unreliability of eyewitness testimony properly excluded). Credibility is a matter to be decided by the jury. *See United States v. Barnard,* 490 F.2d 907, 912–13 (9th Cir.1973) (trial court properly excluded psychiatric and psychological testimony as to credibility of codefendant, a prosecution witness), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Accord *United States v. Awkard,* 597 F.2d 667, 671 (9th Cir.), cert. denied, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979). Binder claims that while none of the experts was allowed to testify specifically as to the complaining witnesses' credibility, the effect of the expert testimony was to "improperly buttress" that credibility. We agree.

There was no physical evidence to support or contradict the children's allegations, and there were no witnesses to the alleged offenses. Binder maintained his innocence and that the children invented the story because they were angry at him. The verdict necessarily turned on the credibility of Binder and the children. The three expert witnesses testified that the complaining witnesses were able to distinguish reality from fantasy and truth from falsehood. The effect of the expert witnesses' testimony was to bolster the children's story and to usurp the jury's fact-finding function. It is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience. This is an area in which jurors did not need additional assistance. The expert testimony was not admitted for purposes of determining the children's competency to testify. Before the trial began, the court found the children competent and allowed their testimony to be videotaped. The testimony of the experts came long after the preliminary competency determination had been made.

Nor was this an instance where the expert testimony was admitted solely to aid the jury in understanding credibility evaluations or problems common to all children of the victim's age. See, e.g., *People v. Roscoe,* 168 Cal.App.3d 1093, 1098–99, 215 Cal.Rptr. 45, 48–49 (5th Dist.1985) (expert testimony as to credibility of a particular child molestation victim was impermissible); *People v. Bledsoe,* 36 Cal.3d 236, 247, 203 Cal.Rptr. 450, 461, 681 P.2d 291, 301 (1984) (expert testimony based upon professional research or experience as to a class of victims may be admissible to rehabilitate a molestation victim's credibility). The testimony of the experts in this case was not limited to references to psychological literature or experience or to a discussion of a class of victims generally. Rather the experts testified that these particular children in this particular case could be believed. The jury in effect was impermissibly being asked to accept an expert's determination that these particular witnesses were truthful.

Finally, the erroneous admission of the expert testimony was not harmless. But cf. *United States v. Barrett,* 703 F.2d 1076, 1082 (9th Cir.1983) (erroneously admitted expert testimony not reversed because, among other factors, ample corroborating evidence to support the conviction); *Awkard,* 597 F.2d at 672 (ample evidence to support conviction rendered erroneous admission of expert testimony harmless). Here, the objectionable testimony concerned a crucial issue in the case. Indeed the jury specially asked to see the doctors' reports during deliberations, thus suggesting that the jury may have given substantial emphasis to the doctors' evaluation of the children's credibility.

CONCLUSION

The trial court did not err in admitting Binder's statement or in applying the state statutory minimum sentence. It was error to permit the jury to replay the videotaped testimony in the jury room during deliberations, and to allow expert testimony during the trial as to the children's ability to distinguish truth from falsehood.

Appellant's conviction is **REVERSED**.

WALLACE, Circuit Judge, concurring in part and dissenting in part:

The majority rules on four issues: (1) whether Binder made a voluntary and knowing waiver of his *Miranda* rights before making incriminating statements, (2) whether Binder's sentence was an abuse of discretion, (3) whether the district judge abused his discretion by replaying part of the children's videotaped testimony, and (4) whether the district judge abused his discretion by admitting expert testimony concerning the children's ability to discern truth from falsehood and reality from fantasy. I agree with the majority that the first two issues present no abuse of discretion, but disagree that a new trial is required due to what the majority concludes is an abuse of discretion on the last two issues.

The majority reasons that the district judge abused his discretion in replaying part of the videotape because it unduly emphasized the testimony of the children. The opinion relies only on *United States v. Nolan*, 700 F.2d 479, 486 (9th Cir.), *cert. denied*, 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983). In *Nolan*, we upheld a district court's exercise of discretion in refusing to reread certain testimony. The major proposition of *Nolan* is that "[a] trial court is given great latitude in deciding whether to reread testimony requested by the jury." *Id.* at 486. The defendant in *Nolan* was arguing for reversal on the ground that the judge had refused to reread certain testimony. We justified the district judge's decision not to do so by observing that rereading testimony "is disfavored because of the emphasis it places

on specific testimony and the delay it causes in the trial." *Id. Nolan* provides little assistance to the holding by the majority.

The latitude of trial judges in this area has been universally considered to be great. The majority cites no case in which a recent circuit court has deemed a decision to reread testimony an abuse of discretion. *See United States v. King*, 552 F.2d 833, 850 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977) (*King*); *see, e.g., Nolan*, 700 F.2d at 486; *United States v. De Luca*, 692 F.2d 1277, 1286 (9th Cir.1982) (not abuse of discretion to deny request to reread because district judge is "better able to determine whether the 'beneficial effects from allowing the jury to review a part of the transcript outweigh the risk that the jury will give undue weight to that part of the evidence.'") (*De Luca*), *quoting United States v. An Article of Drug*, 661 F.2d 742, 746 (9th Cir.1981) (per curiam) (*Drug*). *See also King*, 552 F.2d at 850 (not abuse of discretion to grant request to reread *portions* of the testimony).

The district judge is in a better position than we are to determine whether the benefits of allowing the jury to review the videotaped testimony outweighed the risk that the jury would give undue weight to that portion of the evidence. *De Luca*, 692 F.2d at 1286; *Drug*, 661 F.2d at 746. Indeed, in this case the district judge, in exercising his discretion, considered the benefit to Binder in replaying the videotapes. In deciding to grant the jury's request, he stated:

If they had been just crackerjack witnesses I would be a little bit more reluctant, but they were very hesitant, particularly Vanessa. I didn't—I thought their testimony was strong enough to get past your motion for acquittal, but I didn't think that it was—you know, it's still a question of credibility. I'm just kind of feeling that I sought to, particularly from the defendant's standpoint, allow them to be played, because the

Jury's notes are now going to indicate that.

The majority, however, was influenced not by what the jury heard a second time, but by what they *saw* a second time. The majority worried that replaying the videotape would emphasize the children's credibility unduly during the deliberations, maj. op. at 601, and suggested the alternative procedure of rereading the videotape testimony. *Id.* at 601 n. 1. I disagree with this analysis for two reasons. First, the question of a satisfactory, alternative procedure is not before us—we need to decide only whether the procedure used by the district judge was an abuse of discretion. The record, moreover, does not clearly reflect that the court reporter reported or transcribed the videotaped testimony verbatim when it was played initially, or that the district judge had the reporter's notes or a transcript available when the jury made its request. The record reflects only that a transcript was filed with the district court on October 5, 1984, long after judgment was entered on August 27, 1984. Thus, I do not believe that we can find it an abuse of discretion for a district judge not to have the reporter's notes or a transcript if he may not have had the notes or transcript readily available.

Even if such a transcript or notes were available, however, I would disagree with the majority for a second and more important reason. The majority holds that videotapes are "unique" and cannot be replayed when the credibility of the taped witness is a key issue. This result is contrary to both logic and our precedent. We have upheld the replaying of *audio* tapes to the jury upon their request. *United States v. Puchi*, 441 F.2d 697, 702 (9th Cir.), *cert. denied*, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971). *See United States v. Sims*, 719 F.2d 375, 379 (11th Cir.1983) (per curiam) (district court's replay of audiotaped testimony upheld), *cert. denied*, —— U.S. ——, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984) (*Sims*); *cf.* 28 U.S.C. § 753(b) ("proceeding[s] ... shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method

..."). To distinguish videotaped testimony from other testimony because the former may demonstrate credibility more vividly is to ignore our precedent regarding audio testimony. Audio tapes also may reveal indicia of credibility: a tremor in the voice, a stammer, a pregnant pause, or a stutter, among others, all may reveal physical clues as to the trustworthiness of a particular witness, none of which are apparent from a cold transcript. While it is undeniably true that a videotape reveals even more such indicia, these are differences of degree, not of kind. The incremental ability to see facial expression and body movements does not justify an artificial distinction between sound and videotapes for purposes of permitting their replay to the jury. In this case, moreover, the parties stipulated to the use of the videotape. Under these circumstances, the videotape could be replayed for the jury. *See Sims*, 719 F.2d at 379.

The majority also mentions that the district judge allowed the jury to view the videotape without reviewing the introductory part of the tape. A request to view in a more abridged fashion was declined. The majority points to no prejudice from these rulings, and I have found none in the record. The district court may permit only portions of certain testimony to be reread. *See King*, 552 F.2d at 850. It is not required to reread all of a particular witness' testimony. Four other arguments raised by Binder against replaying the videotape, and mentioned by the majority are all either unmeritorious or unobjected to in the district court.

I also disagree with the majority's conclusion that the district judge abused his discretion because he allowed expert testimony to buttress improperly the children's credibility. The experts, each of whom had examined the children, testified that the children were able to differentiate between truth and falsehood, and between reality and fantasy.

In each of the cases on which the majority relies, the expert actually testified as to

whether the particular witness should have been believed. *See United States v. Awkard*, 597 F.2d 667, 671 (9th Cir.), *cert. denied*, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979); *United States v. Barnard*, 490 F.2d 907, 912–13 (9th Cir.1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974); *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir.1973). In this case, the experts testified only that the children were *capable* of telling the truth—they did not opine as to whether or not the children *actually had done so*. The difference between knowing that a witness can tell the truth and concluding that he did so is fundamental. Thus, the jury was free to believe or disbelieve the children's testimony, and in my judgment, the expert testimony neither helped nor hindered that determination.

Moreover, the fact that such testimony normally is taken outside the presence of the jury when the judge determines competence to testify does not require a new trial. The evidence of the children's competency was merely a small part of the expert testimony to which no objection is now being raised. Although I might have sustained an objection to this evidence had I been the district judge, in light of the facts of this case and the lack of expert testimony tending to make the children more or less believable, I cannot conclude that its admission was an abuse of discretion.

Finally, the majority's conclusion that the jury's request to see the doctors' reports suggests undue emphasis on credibility is pure speculation. These reports contained evidence other than that related to credibility.

For the foregoing reasons, I would affirm Binder's conviction.