UNITED STATES of America

v.

**Hung Khac PHAM.**

**No. CR–92–0308 WHO.**

United States District Court,
N.D. California.

Feb. 22, 1993.

---

John A. Mendez, U.S. Atty., Elizabeth K. Lee, Asst. U.S. Atty., San Francisco, CA, for plaintiff.

Arthur K. Wachtel, Horngrad & Wachtel, San Francisco, CA, for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

Defendant Hung Khac Pham ("Pham") moves to suppress statements he made to government investigators on June 20 and June 22, 1992. Pham claims that those statements were obtained in violation of Rule 5 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3501, and the Due Process Clause of the Fifth Amendment to the Constitution of the United States. For the reasons stated herein, the Court denies Pham's motion.

### I. FINDINGS OF FACT.

Based on the declarations and exhibits submitted, and on the testimony given at the hearings on December 9, 1992, and February 10, 1993, the Court makes the following findings of fact:

#### A. *The June 20 Statement.*

1. Drug Enforcement Administration ("DEA") agents arrested defendant Hoan Thien Le ("Le") on June 18, 1992, as Le was attempting to smuggle heroin into the San Francisco International Airport ("SFO"). Le gave statements to the DEA agents that led to the arrest of three other co-defendants, Phung Kim Nguyen, My Lien Nguyen, and Dung Van Tran ("Tran"). The two Nguyen defendants participated in a plan that led to Pham's arrest.

2. United States Customs Service ("Customs Service") Special Agents William Wallrapp and Marc Taylor arrested Pham on Saturday, June 20, 1992, at 10:15 p.m., at a bar called "Artichoke Joe's" in San Bruno, California.

3. Following Pham's arrest, Agents Wallrapp and Taylor took Pham to Room 814 of the Crown Sterling Suites Hotel in Burlingame, California.

4. The agents and Pham arrived at Room 814 at approximately 10:35 p.m. Pham was handcuffed to a chair in the room.

5. At approximately 10:45 p.m., Santa Clara County District Attorney Investigator Cal Nguyen proceeded to read the *Miranda* warnings to Pham in English and in Vietnamese.

6. Investigator Nguyen was born in Vietnam and came to the United States in 1978. He is fluent in Vietnamese, which is his native language. Investigator Nguyen has worked as an investigator for the Santa Clara County District Attorney since January 1984.

7. After Investigator Nguyen read the *Miranda* warnings to Pham, he asked Pham whether he understood his rights. Pham responded that he did not understand them.

8. Investigator Nguyen informed Agent Wallrapp of Pham's response. Investigator Nguyen then proceeded once more to explain the *Miranda* warnings to Pham. During this second phase of explaining the *Miranda* warnings, he spoke only in Vietnamese to Pham. This second explanation took approximately fifteen minutes.

9. At approximately 11:10 p.m., Pham indicated to Investigator Nguyen that he understood his rights and wished to waive them.

10. Pham then executed a waiver of rights, which was witnessed by Investigator Nguyen and Agent Wallrapp. Investigator Nguyen wrote down the English translation of Pham's waiver statement: "I don't know much of anything but I want to talk to you and if I don't know something I'll just tell you that."

11. After Pham agreed to waive his rights, Investigator Nguyen stopped writing down notes of what Pham said.

12. Investigator Nguyen follows a standard procedure whenever he serves as a translator during a custodial interrogation: he writes down anything the suspect says regarding the decision to waive his or her rights; once the suspect has waived his or her rights, he stops taking notes. Investigator Nguyen followed this procedure during the June 20, 1992, interrogation of Pham.

13. After Pham executed the waiver of rights, he made several statements to Agent Wallrapp and Investigator Nguyen. Pham told them that when one of his couriers arrived in the United States, Pham would contact an Asian male named "David" in New York City. Pham would call David's telephone "pager" and then wait for David to return his call. When David did call, he would instruct Pham to go to New York City. When Pham arrived in New York, he would go to a hotel room, give David the package delivered by the courier, and receive $12,000 in return.

14. At approximately 11:35 p.m., Pham executed a form authorizing Customs Service agents to search his residence at 1333 Gough Street, Apartment 3N, San Francisco. The consent to search form also authorized agents to search Pham's vehicle, a Pontiac Fierro, California license plate number 2WOD827.

15. Pham executed the consent to search form after being advised of his rights, in English and in Vietnamese, by Investigator Nguyen.

16. After Pham executed the consent to search, Agent Wallrapp explained to Pham that he wanted him to continue with the delivery to David in New York; in other words, Wallrapp asked Pham to participate in a "controlled" delivery, whereby Customs Service agents could arrest David.

17. Pham agreed to participate in the "controlled" delivery.

18. Immediately thereafter, Pham asked the agents for permission to call his sister, who Pham said resided at the apartment described in the consent to search form. The agents allowed Pham to make the telephone call.

19. During the telephone call, which was made in the presence of the agents, Pham said "watch my kids, I'm going away for a long time."

20. Once the telephone call was terminated, Pham told the agents that he had lied about everything he had told them and that he did not wish to participate in the "controlled" delivery.

21. After Pham renounced his earlier statements and indicated an unwillingness to cooperate further, the agents stopped questioning him. They took Pham to the Customs Service office located at SFO for processing. Customs Service Special Agents Joseph Leonti and Leighton Duffus then took Pham to the San Francisco County Jail

("County Jail"), 850 Bryant Street, San Francisco.

22. At no point during either the processing or the transportation did any agent question Pham.

23. Pham was booked into the County Jail on June 21, 1992, at 4:41 a.m.

24. At no time on the evening of June 20, 1992, or the morning of June 21, 1992, did any law enforcement agent threaten Pham.

B. *The June 22 Statement.*

1. On Monday, June 22, 1992, at 1:15 p.m., Customs Service Special Agents Marc Taylor and Joycelynn Favors and DEA Task Force Agents Gil Rodriguez and Stan Baroff arrived at the County Jail to transport Pham and three of his co-defendants (the Nguyens and Tran) to the Federal Building, 450 Golden Gate Avenue, San Francisco.

2. These four co-defendants were scheduled to be arraigned before Magistrate Judge Wayne D. Brazil on June 22, 1992, at 1:30 p.m.

3. The travel time from the County Jail to the Federal Building is approximately five to ten minutes by car. The procedure for releasing an inmate from the County Jail to the custody of federal agents takes approximately fifteen to twenty minutes.

4. While the agents were at the County Jail, Pham approached Agent Baroff and said that he had changed his mind, that he wanted to talk to Agent Baroff, and that he wanted to cooperate with the investigation. Pham's statement was not made in response to any question asked by Agent Baroff.

5. Agent Baroff then told Pham to wait while he informed Agent Taylor of Pham's statement.

6. After Agent Baroff told Agent Taylor what Pham had said, Agent Taylor told Pham not to say anything else until they all arrived at the Federal Building and Agent Taylor had a chance to discuss Pham's statement with the Assistant United States Attorney.

7. Agents Baroff and Favors transported Pham and co-defendant Tran to the Federal Building. Neither agent asked Pham any-

thing about the case during the trip to the Federal Building.

8. Agents Baroff and Favors, together with Pham and Tran, arrived at the Federal Building at approximately 1:45 p.m. Agent Baroff took Pham and Tran directly to the 17th Floor, where Magistrate Judge Brazil's courtroom is located. Pham was seated outside of Magistrate Judge Brazil's courtroom, along with three of his co-defendants (the Nguyens and Tran), Agent Taylor, and Customs Service Special Agent Joseph Pieretti.

9. Agent Taylor informed Agent Pieretti of Pham's statement to Agent Baroff at the County Jail. Agent Pieretti informed the United States Attorney's Office that Pham wished to cooperate with the investigation.

10. Several minutes after the defendants arrived outside Magistrate Judge Brazil's courtroom, Assistant United States Attorney Geoffrey Anderson emerged from that courtroom. Anderson informed Agent Pieretti that Magistrate Judge Brazil had rescheduled the arraignment of the defendants because a court interpreter was unavailable for that afternoon.

11. An interpreter, fluent in both Vietnamese and English, had appeared in Magistrate Judge Brazil's court earlier that day at 9:30 a.m., for the arraignment of co-defendant Le.

12. The agents and the United States Attorney's Office determined that Le should be arraigned at a different time than his co-defendants. The agents wanted to keep Le away from the other four defendants.

13. Due to the unavailability of an interpreter, Magistrate Judge Brazil continued the arraignment of Pham and his remaining co-defendants to the next day, June 23, 1992, at 9:30 a.m., before Magistrate Judge Claudia Wilken.

14. While outside Magistrate Judge Brazil's courtroom, Pham told Agent Pieretti that he wanted to help with the investigation; he also asked Pieretti whether his assistance would ensure his return to Vietnam. Neither of these statements was made in response to a question asked by Agent Pieretti. Agent Pieretti told Pham that he couldn't promise him anything.

15. Agent Pieretti then consulted the United States Attorney's Office. Thereafter, Agent Pieretti took Pham to the United States Attorney's Office.

16. At the United States Attorney's Office, DEA Analyst Thuy Coyne, who speaks both Vietnamese and English, read to Pham in Vietnamese the words from a waiver of rights form. This waiver of rights form included a waiver of (1) the *Miranda* rights and (2) the rights accorded a defendant under Rule 5(a) of the Federal Rules of Criminal Procedure, including *inter alia*, the "right to appear immediately before a Federal Magistrate–Judge" for purposes of being arraigned.

17. When Analyst Coyne finished translating the waiver of rights, Pham said to Agent Pieretti in English that he understood the rights explained to him and that he wished to sign a written waiver of rights form.

18. At approximately 3:15 p.m., Pham executed a written waiver of rights; the form Pham signed contained exactly the same language that Analyst Coyne had translated to him in Vietnamese. Analyst Coyne signed the waiver form as a witness.

19. Following his execution of the waiver of rights form, Pham proceeded to give Agent Pieretti a statement regarding the drug smuggling operation.

20. Pham thereafter agreed to cooperate with federal authorities in the "controlled" delivery to David. On Tuesday, June 23, 1992, at 8:00 a.m. (an hour and a half before the rescheduled arraignment before Magistrate Judge Wilken), Pham and several undercover agents boarded a plane for New York City for the purpose of completing the "controlled" delivery to David.

21. Pham was indicted on June 30, 1992. He was arraigned sometime after June 23, 1992.

22. At no time on June 22, 1992, did any law enforcement agent or representative of the United States Attorney's Office threaten Pham.

## II. CONCLUSIONS OF LAW.

### A. *The June 20 Statement.*

1. When a criminal suspect is taken into custody, that suspect must be informed of certain rights prior to the commencement of interrogation. *See Miranda. v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. A suspect may waive his or her rights under *Miranda*, and interrogation of the suspect may proceed. The suspect's waiver, however, must be knowing *and* voluntary. Whether a waiver is knowing and voluntary is determined according to the following tests:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)).

3. The government bears the burden of showing a valid waiver by a preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986).

4. The government has met its burden of showing that Pham's June 20, 1992, waiver was both knowing and voluntary. Clearly, Pham's waiver was "knowing." Pham waived his *Miranda* rights after Investigator Nguyen twice read the warnings in Vietnamese. The Court is satisfied that Pham waived each of his rights with "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141. Pham attempts to

rebut the government's showing that his waiver was "knowing" by arguing that Investigator Nguyen misinterpreted Pham's statement. Pham now claims that he told Investigator Nguyen, "I don't *understand* much of anything." In support of this argument, Pham points to the phonetic similarities between the verbs "know" and "understand" in Vietnamese. Investigator Nguyen held to his original translation ("I don't *know* much of anything") when confronted on cross-examination. The Court accepts Investigator Nguyen's testimony and rejects Pham's argument that his waiver was not "knowing."

The Court also finds that Pham's waiver was "voluntary." The words "I want to talk to you" indicate a decision based on a "free and deliberate choice." *Id.* There is nothing to indicate that Pham's waiver was the product of "intimidation, coercion, or deception." *Id.*

5. The Court also must determine whether Pham's June 20, 1992, statement (as opposed to his waiver of his *Miranda* rights) was voluntarily given:

> Before a criminal defendant's statement can be used against him, the government must prove its voluntariness *by a preponderance of the evidence.* An inculpatory statement is voluntary *only when it is the product of a rational intellect and a free will.* The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.

*United States v. Leon Guerrero,* 847 F.2d 1363, 1365–66 (9th Cir.1988) (emphasis added) (citations omitted).

6. The government has met its burden of demonstrating that Pham's June 20, 1992, statement was made "voluntarily." The totality of the circumstances indicates that Pham's statement was "the product of a rational intellect and a free will." *Id.* at 1365.

### B. *The June 22 Statement.*

1. Rule 5(a) of the Federal Rules of Criminal Procedure requires an arresting of-

ficer to "take the arrested person *without unnecessary delay* before the nearest available federal magistrate[.]" Fed.R.Crim.P. 5(a) (emphasis added).

2. For purposes of Pham's motion, the critical words in Rule 5(a) are "without *unnecessary* delay." Well before *Miranda,* the Supreme Court determined that the appropriate remedy for violations of Rule 5(a) was to suppress confessions obtained during an unnecessary delay before arraignment. This remedial rule, applicable only in federal criminal cases, is known as the *McNabb–Mallory* rule, taking its name from the cases that created it. *United States v. Mallory,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

3. Section 3501(c) of Title 18, United States Code, addresses the narrow issue of prearraignment delay, which also is the focus of Rule 5(a) and the *McNabb–Mallory* rule. Under § 3501(c), a confession obtained during a prearraignment detention

> shall not be inadmissible solely because of delay in [arraignment] [1] if such confession is found by the trial judge to have been made voluntarily and [2] if the weight to be given to the confession is left to the jury and [3] *if such confession was made or given by the person within six hours immediately following his arrest or other detention.*

18 U.S.C. § 3501(c) (emphasis added). The net effect of the underscored language is to create a six-hour "safe harbor" during which a confession will not be excludable on the basis of the *McNabb–Mallory* rule.[1] Thus, prearraignment delays of six hours or less are *per se* reasonable.

4. "[A] confession outside of the section (c) safe harbor is subject to the *McNabb–Mallory* rule, which mandates exclusion if the delay in arraignment is unreasonable." *United States v. Alvarez–Sanchez,* 975 F.2d 1396, 1402–03 (9th Cir.1992).

5. When analyzing a confession obtained outside of the six-hour "safe harbor,"

---

1. The *McNabb–Mallory* rule, therefore, has no application to Pham's June 20, 1992, statement, which was made voluntarily less than two hours after his arrest.

the critical issue is whether the delay was "unreasonable." Although the term "unreasonable" suggests a fact specific inquiry, one bright line rule does emerge from *Alvarez–Sanchez:* where the delay is caused so that investigators will have additional time to interrogate the defendant, then the delay *is unreasonable* and any confession obtained during that time *must* be suppressed. *Id.* at 1405–06.

■ 6. The question whether Pham's June 22, 1992, statement should be suppressed under Rule 5(a) and § 3501(c) is complicated by the fact that Pham *waived* his right to appear before a magistrate *before* giving that statement to Agent Pieretti. A criminal suspect *may* waive his Rule 5(a) right to be brought promptly before a magistrate. *See United States v. Binder,* 769 F.2d 595, 598 (9th Cir.1985); *United States v. Indian Boy X,* 565 F.2d 585, 591 (9th Cir. 1977), *cert. denied,* 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978). Although Pham's June 22, 1992, waiver (as discussed below) was a valid one, the Court proceeds to the question whether the delay that preceded that waiver (which delay was outside of the six-hour "safe harbor" of § 3501(c)) was "unreasonable." [2]

■ 7. The delay from the time of Pham's arrest on June 20, 1992, at 10:15 p.m., to the time he executed the waiver of rights form on June 22, 1992, at 3:15 p.m., was occasioned by: (a) the fact that he was arrested late Saturday evening and could not be arraigned before a magistrate until the following Monday; [3] (b) the decision made by the United States Attorney's Office and the investigating agents that defendant Le should be arraigned at a different time than his co-defendants; and (c) the unavailability of an interpreter at the afternoon hearing before Magistrate Judge Brazil, which unavailability necessitated putting over the arraignment until the morning of June 23, 1992. The delay from the time Pham executed the waiver and made his statement to the time of his arraignment was occasioned by Pham's cooperation in the "controlled" delivery.

8. Pham's arraignment was not delayed for the purpose of allowing federal officials additional time to interrogate Pham. Therefore, the *Alvarez–Sanchez* rule of suppression for such delays does not apply.

9. The delays that preceded both Pham's June 22, 1992, waiver of rights and his eventual arraignment were "reasonable." *See United States v. Mendoza,* 473 F.2d 697, 702 (5th Cir.1973) (unavailability of magistrate over weekend does not violate Rule 5(a)); *United States v. Leviton,* 193 F.2d 848, 855 (2d Cir.1951) (delay occasioned by criminal suspect's own readiness to volunteer assistance to authorities is reasonable), *cert. denied,* 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350 (1952); *cf. United States v. Beltran,* 761 F.2d 1, 8 (1st Cir.1985) (delay caused by unavailability of an interpreter is reasonable). With respect to the delay that preceded Pham's June 22, 1992 waiver of rights, the Court notes that the case for suppression is especially weak, given that government agents did not question Pham *at all* outside of the six-hour "safe harbor."

10. Following the analysis set forth with respect to the June 20, 1992, statement, *supra,* the Court finds that Pham's June 22,

---

**2.** The Ninth Circuit has stated repeatedly that a waiver of the *Miranda* rights *alone* constitutes a waiver of the rights secured by Rule 5(a). *See, e.g., Binder,* 769 F.2d at 598; *Indian Boy X,* 565 F.2d at 591. *Alvarez–Sanchez* casts doubt on the vitality of those cases. The *Alvarez–Sanchez* defendant was arrested on a Friday and held in custody during the following weekend. On the following Monday, the defendant waived his *Miranda* rights; he was not arraigned until the next day, Tuesday. *See* 975 F.2d at 1397–98. Despite the defendant's waiver of his *Miranda* rights (which waiver, under the *Binder* logic, should have been valid as to the requirements of Rule 5(a)), the Ninth Circuit proceeded to address the reasonableness of the prearraignment delay.

The Ninth Circuit did not discuss the effect of the *Miranda* waiver on the § 3501(c)–Rule 5(a) analysis, perhaps because that waiver was secured while the defendant was in state (as opposed to federal) custody.

Whatever the effect of Pham's waiver, the Court finds that prudence dictates a consideration of whether the delay preceding that waiver was "unreasonable" in light of the relevant authorities.

**3.** In this District, arraignments are conducted before magistrate judges during the weekday criminal calendar. *See* Local Rule 310.

1992, waiver of his rights was valid, in that the waiver was both knowing and voluntary.

11. Following the analysis set forth with respect to the June 20, 1992, statement, *supra*, the Court finds that Pham's June 22, 1992, statement was made voluntarily.

## III. ORDER.

For the foregoing reasons,

IT IS HEREBY ORDERED that defendant Hung Khac Pham's motion to suppress statements given to government authorities on June 20 and June 22, 1992, is DENIED.