**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hugo RINCON, Defendant–Appellant.**

No. 90–50491.

United States Court of Appeals,
Ninth Circuit.

Decided: June 17, 1994.

Neison M. Marks, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Alejandro N. Mayorkas, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: Chief Judge WALLACE, TROTT, and T.G. NELSON, Circuit Judges.

Opinion by Judge T.G. NELSON.

T.G. NELSON, Circuit Judge:

# I

## OVERVIEW

Hugo Rincon (Rincon) was convicted on two counts of unarmed bank robbery. On Rincon's first appeal to this court, he contended that the district court erred in refusing to admit expert testimony regarding the reliability of eyewitness identification. We affirmed the district court's exclusion of that expert testimony in *United States v. Rincon (Rincon I)*, 984 F.2d 1003 (9th Cir.1993). After the Supreme Court's recent decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding the admissibility of expert testimony, the Court remanded

this case and asked us to reexamine that issue in light of *Daubert*. We remanded to the district court for reconsideration. The district court upheld its earlier decision to exclude the expert testimony. We affirm.

# II

## BACKGROUND

Rincon was indicted on two counts of unarmed bank robbery. Count one charged Rincon with the April 21, 1988 robbery of California Federal Savings and Loan. Count two charged him with the April 27, 1988 robbery of Culver National Bank. The district court denied Rincon's pretrial motion *in limine* in which he sought to introduce expert testimony on eyewitness identification. After a jury trial, Rincon was convicted of both robberies. On appeal, Rincon contended that the district court erred both in refusing to admit the expert testimony regarding the reliability of eyewitness identifications and in allowing the jury to review certain evidence. We rejected both arguments and affirmed Rincon's convictions in *Rincon I*, 984 F.2d at 1003.[1]

After our decision, the Supreme Court held that Fed.R.Evid. 702 regarding the admissibility of expert testimony superseded the general acceptance theory as set forth in *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923). *See Daubert*, 509 U.S. ——, 113 S.Ct. 2786. Accordingly, on October 4, 1993, the Supreme Court granted Rincon's petition for writ of certiorari, vacated our decision in *Rincon I* and remanded for further consideration in light of *Daubert*. *See Rincon v. United States*, —— U.S. ——, 114 S.Ct. 41, 126 L.Ed.2d 12 (1993). We then remanded to the district court for the limited purpose of reexamining the admissibility of the expert testimony on eyewitness identification in light of *Daubert*. *See United States v. Rincon*, 11 F.3d 922 (9th Cir.1993).

On remand to the district court, Rincon again proffered the testimony of an experi-

---

1. For a more detailed statement of facts, *see Rincon I*, 984 F.2d at 1004–05. Although the Supreme Court vacated our decision in its entirety, *Daubert* did not affect our decision on the

propriety of the jury's view of him next to the surveillance photograph. For convenience, we restate that portion of *Rincon I* in Part IV.

mental psychologist and full professor at the Claremont Graduate School of Psychology, Kathy Pezdek, Ph.D. If permitted to testify, Dr. Pezdek would explain to the jury, among other things, the three phases of eyewitness identification, including perceiving and encoding, storage and retention, and retrieval of information. Dr. Pezdek would also testify as to the effect of various psychological factors on each phase, including stress, the observer's state of mind, suddenness, suggestibility, and cross-ethnic identifications. In addition, she would testify that empirical research contradicts numerous lay notions of eyewitness identifications. Dr. Pezdek, however, would offer no definitive opinion concerning the reliability or certainty of the witnesses identifications in this case. After reconsidering the issue, the district court affirmed its earlier order denying Rincon's motion *in limine* and excluding the expert testimony. Rincon challenges the district court's exclusion of the expert testimony.

### III

### EXPERT TESTIMONY

■ We review for abuse of discretion the district court's decision regarding the admissibility of expert testimony on the reliability of eyewitness identifications. *United States v. Amador–Galvan,* 9 F.3d 1414, 1417 (9th Cir.1993) (reviewing admissibility of expert testimony on eyewitness identification); *see also United States v. Rahm,* 993 F.2d 1405, 1409–10 (9th Cir.1993).

In *Daubert,* the Supreme Court held that Fed.R.Evid. 702 [2] supersedes the general acceptance standard established in *Frye.* 509 U.S. at ———— ————, 113 S.Ct. at 2793–94. It noted, however, that notwithstanding its holding, the Federal Rules of Evidence still place limits on the admissibility of scientific evidence. *Id.* at ———— ————, 113 S.Ct. at 2794–95. "Nor is the trial judge disabled from screening such evidence. To the con-

trary, under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at ——, 113 S.Ct. at 2795. The Court established a two-part test for determining whether to admit expert testimony: "[T]he trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at ——, 113 S.Ct. at 2796. These preliminary questions must be established by a preponderance of proof. *Id.* at —— n. 10, 113 S.Ct. at 2796 n. 10. Finally, the Court stated that evidence otherwise admissible may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id.* at ——, 113 S.Ct. at 2798.

■ On remand, the district court excluded the expert testimony on eyewitness identification, ruling that:

1. The proposed testimony invades the province of the jury (i.e., it does not assist the trier of fact);

2. No showing has been made that the testimony relates to an area that is recognized as a science; and

3. The testimony is likely to confuse the jury.

Moreover, the district court stated that "the proposed expert eyewitness identification testimony is being offered by the defense more in the role of an advocate and not as a scientifically valid opinion." We conclude that the district court did not abuse its discretion in excluding Dr. Pezdek's expert testimony because Rincon's proffer failed to satisfy the admissibility standard established in *Daubert.*

#### A. *Scientific Knowledge* [3]

■ "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must

---

**2.** Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or edu-

cation, may testify thereto in the form of an opinion or otherwise.

**3.** Rincon argues that the proffered testimony constitutes scientific knowledge. Thus, as in *Daubert,* 509 U.S. at —— n. 8, 113 S.Ct. at 2795 n. 8, we limit our discussion to the "scientific

be derived by the scientific method. Proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Id.* at ——, 113 S.Ct. at 2795. The scientific knowledge requirement establishes a standard of evidentiary reliability. *Id.* The district court must make a preliminary assessment as to whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* at ——, 113 S.Ct. at 2796. *Daubert* set forth several factors which the district court may consider in determining whether a theory or technique constitutes "scientific knowledge," including: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the particular degree of acceptance within the scientific community. *Id.* at —— ——, 113 S.Ct. at 2796–97. This list is not exhaustive. Nor did the Court "presume to set out a definitive checklist or test." *Id.* at ——, 113 S.Ct. at 2796.

The first inquiry, then, under *Daubert* is whether the proposed testimony of Dr. Pezdek was on a "scientific" subject. On remand, the district court denied Rincon's motion on three grounds, one of which was that "no showing has been made that the testimony relates to an area that is recognized as a science."

In the initial motion, Rincon asserted that Dr. Pezdek held a Ph.D. in psychology from the University of Massachusetts at Amherst, and was a full professor at the Claremont Graduate School of Psychology. She would testify that there are three phases of eyewitness identification: perception and encoding; storage and retention (memory); and retrieval. In turn, the perception and encoding phase are affected by the factors of stress, duration of exposure, cross-racial identification, and availability of facial features (whether or not the face is partially obscured). The storage and retrieval stages are affected by time delay and suggestibility.

Dr. Pezdek would also discuss certain lay notions of eyewitness identification that are contradicted by research, such as: the certainty of the identification is a measure of the reliability of the identification; accuracy of memory is improved by stress; and memory of a face does not diminish over time.

The declaration of Rincon's counsel which accompanied the motion expanded on each of these matters, with statements such as: "There is a wealth of research supporting this point, ..."; "The research is clear...."; "The research suggests...." However, none of the research was submitted or described so that the district court could determine if the studies were indeed scientific on the basis the Court explained in *Daubert:* "whether the reasoning or methodology underlying the testimony is scientifically valid...." *Daubert,* at ——, 113 S.Ct. at 2796.

On remand, Rincon supplemented the record with a copy of an article entitled *The "General Acceptance" of Psychological Research on Eyewitness Testimony.*[4] The article described a survey of sixty-three experts on eyewitness testimony relating to their views of the scientific acceptance of research on a number of topics, including those that Dr. Pezdek would testify to. As the article said:

> The results are discussed in relation to the "general acceptance" provision of the *Frye* test and the limitations of this test for determining the admissibility of expert testimony.

*Id.* at 1089.

However, while the article identified the research on some of the topics, it did not discuss the research in sufficient detail that the district court could determine if the research was scientifically valid. In the argument before the district court, counsel for Rincon told the court that Dr. Pezdek could testify about the studies that had been done on the various topics. However, he again did not offer or describe the studies themselves. The district court's determination that Rin-

---

knowledge" aspect of Rule 702, even though that rule also applies to "technical, or other specialized knowledge."

4. Kassin, Ellsworth, & Smith, *The "General Acceptance" of Psychological Research on Eyewitness Testimony,* Am. Psychologist, Aug. 1989, at 1089–98.

con had not shown the proposed testimony related to a scientific subject is supported by the record.

## B. *Assist Trier of Fact*

█ Even when a theory or methodology satisfies the "scientific knowledge" requirement, in order to be admissible, expert testimony must also "assist the trier of fact to understand or to determine a fact in issue." *Daubert*, at ——, 113 S.Ct. at 2796. This second requirement relates primarily to relevance. *Id.* ——, 113 S.Ct. at 2795. It requires the district court to make a preliminary determination as to whether the scientific knowledge can be applied to facts of the case at hand. *Id.* at ——, 113 S.Ct. at 2796.

The expert testimony Rincon offered was no doubt relevant to his defense. *See Amador–Galvan*, 9 F.3d at 1418 (evidence attacking reliability of eyewitness testimony was relevant to defendant's defense, but because it was not clear whether expert testimony was scientifically valid, reliable and helpful to jury, we remanded for such determinations in light of *Daubert*). A determination that evidence is relevant does not end the inquiry. Rather, *Daubert* reiterates that the district court may nonetheless exclude relevant expert evidence pursuant to Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, *confusion of the issues*, or misleading the jury." *Daubert*, 509 U.S. at ——, 113 S.Ct. at 2798 (emphasis added) (internal quotations omitted). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of that risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.* at ——, 113 S.Ct. at 2798 (internal quotations omitted). Thus, *Daubert* in no way altered the discretion that resides with the district court judge to determine whether such evidence is properly admitted. *See id.* at —— – ——, 113 S.Ct. at 2798–99.

In this case, the district court found that Dr. Pezdek's testimony would not assist the trier of fact and that it would likely confuse or mislead the jury. Rincon argues that the district court erred in excluding the evidence because Dr. Pezdek's testimony was relevant evidence which would have helped the jury arrive at informed decision. Her testimony would have addressed factors that effect eyewitness identifications, such as passage of time, stress, identification from the lower half of the face, the relationship between certainty and accuracy, and cross-ethnic identifications. We decline to disturb the district court's ruling.

Even though the factors about which Dr. Pezdek was to testify may have been informative, the district court conveyed that same information by providing a comprehensive jury instruction to guide the jury's deliberations. As Rincon's own article on such expert eyewitness testimony suggests, alternative solutions exist.

> [O]ur results should not be taken to imply that using psychological experts is the best possible solution for the problems arising from eyewitness testimony. ... *[B]ecause expert testimony is costly, an alternative would be to educate jurors through cautionary instructions.*[5]

The district court gave the jury in this case a comprehensive instruction on eyewitness identifications. The instruction addressed many of the factors about which Dr. Pezdek would have testified. The district court instructed the jury to consider whether: (1) the eyewitness had the capacity and adequate opportunity to observe the offender based upon the length of time for observation as well as the conditions of observation; (2) the identification was the product of the eyewitness's own recollection or was the result of subsequent influence or suggestiveness; (3) the eyewitness has made inconsistent identifications; and (4) the eyewitness was credible. The instruction also pointed out the danger of a showup versus the reliability of a lineup with similar individuals from which the eyewitness must choose. Finally, it permitted the jury to consider, as a factor bearing upon the reliability of the eyewitness testimony, the length of time which may have

---

**5.** Kassin, *supra* note 4, at 1097–98 (emphasis added) (internal citation omitted).

elapsed between the occurrence of the crime and the eyewitness's identification.[6]

As Rincon's article indicates, "it remains to be seen whether experts can enhance jurors' ability to distinguish accurate from inaccurate eyewitnesses, or whether the dangers of such testimony outweigh its probative value; *e.g.*, whether jurors become not more or less skeptical, but more or less *accurate* in their judgments of eyewitness testimony."[7] In any event, the article is inconclusive as to the effect such evidence has on a jury. Given the powerful nature of expert testimony, coupled with its potential to mislead the jury, we cannot say that the district court erred in concluding that the proffered evidence would not assist the trier of fact and that it was likely to mislead the jury.

Notwithstanding our conclusion, we emphasize that the result we reach in this case is based upon an individualized inquiry, rather than strict application of the past rule concerning expert testimony on the reliability of eyewitness identification. *See Amador–Galvan*, 9 F.3d at 1418. Our conclusion does not preclude the admission of such testimony when the proffering party satisfies the standard established in *Daubert* by showing that the expert opinion is based upon "scientific knowledge" which is both reliable and helpful to the jury in any given case. *See Daubert*, 509 U.S. at ——, 113 S.Ct. at 2796. District courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in *Daubert. See id.* at —— – ——, 113 S.Ct. at 2798–99. The district court struck such a balance in this case.

## IV

## REVIEW OF EVIDENCE

■ Rincon, relying on our decision in *United States v. Navarro–Garcia*, 926 F.2d 818 (9th Cir.1991), contends that he was denied due process because the district court

allowed the jury to view him next to a surveillance photograph after jury deliberations had begun. He argues that this display was extrinsic evidence not introduced at trial, and thus was prejudicial. We reject these arguments.

Rincon's reliance on *Navarro* is misplaced and does not resolve the issue before us. *Navarro* involved a situation in which a juror had conducted an experiment on her own, outside the courtroom, by adding three hundred pounds to the trunk of her car to determine what effect the weight would have on the car. *Id.* at 820. The juror was hoping to find out whether it was plausible that the defendant did not know 344 pounds of marijuana were present in the trunk of her car. *See id.*

*Navarro* emphasized that jurors have a duty to consider only the evidence presented to them in court. *Id.* at 821. It then defined "extrinsic evidence" to include "[e]vidence not presented at trial, acquired through out-of-court experiments or otherwise. . . ." *Id.* When extrinsic evidence is presented to a jury, the defendant is entitled to a new trial if " 'there exist[s] a reasonable possibility that the extrinsic material could have affected the verdict.' " *Id.* (quoting *United States v. Vasquez*, 597 F.2d 192, 193 (9th Cir.1979)) (brackets in original). *Navarro* held that remand for an evidentiary hearing was necessary to determine what affect the extrinsic evidence had on the jurors. *Id.* at 822–23.

However, in this case, the display which occurred while the jury was deliberating does not fall within *Navarro* 's definition of extrinsic evidence because all the evidence at issue, the surveillance photograph and Rincon himself, were presented to the jury during the trial prior to deliberations. The surveillance photograph was admitted into evidence; two witnesses made in-court identifications of Rincon; and finally, Rincon's sole defense consisted of displaying himself in front of the jury for identification purposes. Therefore, the district court's decision to allow the jury

6. We also note, as we did in *Rincon I*, that the eyewitnesses were subject to cross-examination which gave Rincon the opportunity to reveal any deficiencies in their identifications. *See Rincon I*, 984 F.2d at 1006.

7. Kassin, *supra* note 4, at 1090.

to view the defendant next to the surveillance photograph is not reviewed pursuant to the extrinsic evidence standard outlined in *Navarro;* rather, it must be considered a review of evidence presented during trial.

■ The trial court's decision to replay testimony during jury deliberations is reviewed for abuse of discretion. *United States v. Binder,* 769 F.2d 595, 600 (9th Cir.1985); *United States v. Nickell,* 883 F.2d 824, 829 (9th Cir.1989) (holding it was not abuse of discretion for district court to permit jury to review excerpts of a witness' testimony during deliberations). Our concern with replaying testimony is that it may place undue emphasis on testimony considered a second time after the jury has already begun its deliberations. *United States v. Sacco,* 869 F.2d 499, 501 (9th Cir.1989). Because the district judge is in the best position to evaluate this risk of undue emphasis, we have traditionally accorded the trial court "great latitude" in deciding whether to replay testimony requested by the jury. *United States v. Nolan,* 700 F.2d 479, 486 (9th Cir.), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983).

In *Binder,* we held that it was abuse of discretion for the district court to allow the children's videotape testimony in a child molestation case to be replayed during the jury deliberations. 769 F.2d at 600–01. We reasoned that it was prejudicial because it unduly emphasized particular testimony. *Id.* at 601. The replay served the functional equivalent of allowing a live witness to testify a second time in the jury room. *Id.* at 600 & 601 n. 1. Finally, the district court's failure to replay the entire videotape, instead of abridged versions, put undue emphasis on that portion of the testimony. *Id.* at 601.

However, *Binder* is distinguishable from the present case. The focus in that case was on the "live" nature of the videotaped evidence and the undue emphasis that resulted from allowing the jury to view it during deliberations. *Cf., Nickell, supra,* affirming the trial court's decision allowing the jury to review written excerpts of trial testimony.

In *Brewer,* we held that the district court did not abuse its discretion in allowing the jury to use a magnifying glass to examine certain photographic evidence. *United States v. Brewer,* 783 F.2d 841, 843 (9th Cir.), *cert. denied,* 479 U.S. 831, 107 S.Ct. 118, 93 L.Ed.2d 64 (1986). Similarly, in this case, the jury was allowed to review evidence which had been presented at trial. The jury viewed Rincon in comparison to the surveillance photograph during trial because the surveillance photograph was placed on a stand near Rincon. Had Rincon chosen to introduce a photograph instead of presenting himself to the jury, the jury's review of the two photographs would clearly have been appropriate. In substance, Rincon substituted himself for a photograph. In order for the jury to review the evidence regarding the identity of the robber, it had to look at Rincon as well as the surveillance photograph. Thus, the jury was merely reviewing evidence already presented during the trial and the district court did not abuse its discretion in allowing the jury to examine Rincon next to the surveillance photograph.

The district judge was careful to limit the display to evidence presented at trial. He did not comply with the jury's request to view Rincon next to the surveillance photograph wearing sunglasses because he properly concluded that the sunglasses were extrinsic evidence. Therefore, because the district court is generally given wide latitude in allowing the jury to review evidence during its deliberations, we hold that the district court did not err in allowing this display during jury deliberations.

## V

## CONCLUSION

Rincon has failed to produce sufficient evidence either that the testimony proffered here is based upon "scientific knowledge" or that it would have assisted the trier of fact in this particular case. Accordingly, we conclude that the district court did not abuse its discretion in excluding Dr. Pezdek's testimony. Further, allowing the jury to view Rincon next to the photograph was not error.

AFFIRMED.