39 F.3d 1188
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gellani Hammed BENYAMEN, Defendant-Appellant.
 No. 93-50738.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1994.
Decided Nov. 1, 1994.
 
 Before: FLETCHER, BOOCHEVER, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gellani Hammed Benyamen is a black citizen of Ghana who was arrested after customs inspectors at the Los Angeles International Airport discovered 5.8 kilograms of 93-95% pure heroin hidden in the lining of his suitcases. He appeals his conviction for conspiracy, importation of heroin, and possession with intent to distribute heroin. We have jurisdiction and affirm.
 
 I.
 
 3
 Benyamen first claims Batson error because the Government exercised a peremptory challenge, against a black woman named Harriet Moss. It was the Government's only peremptory challenge. Benyamen maintains that the challenge was racially motivated in violation of Batson v. Kentucky, 476 U.S. 79 (1986). When Benyamen objected to the challenge during voir dire, the Government immediately offered its reasons for challenging Moss; thus, whether Benyamen met his burden under the first prong of Batson to make a prima facie showing of racial discrimination is moot. Hernandez v. New York, --- U.S. ----, 111 S.Ct. 1859, 1866 (1991).
 
 
 4
 The Government explained that it challenged Moss because she had family members who abused drugs and alcohol and a brother with a drug-related conviction.[1] The Government's production of a race-neutral explanation for the challenge satisfied its burden under Batson 's second prong, so this case turns on the third prong of Batson, whether the defense carried its ultimate burden of showing purposeful discrimination. Batson, 476 U.S. at 98; Johnson v. Vasquez, 3 F.3d 1327, 1329 (9th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1838 (1994).
 
 
 5
 Benyamen emphasizes that the Government did not challenge five other prospective jurors who also disclosed that they knew people with substance abuse problems. See U.S. v. Chinchilla, 874 F.2d 695, 697-99 (9th Cir.1989) (court may engage in "comparative analysis" on appellate review). However, Batson is not violated "whenever prospective jurors of different races provide similar responses and one is excused while the other is not." Burks v. Borg, 27 F.3d 1424, 1429 (9th Cir.1994). Only one other prospective juror had a family member with a drug-related conviction, and, unlike Moss, this juror indicated that he did not have a relationship with his brother at the time of the conviction and had none since. Moreover, although the Government had the opportunity to challenge other non-white jurors it did not do so. See Burks, 27 F.3d at 1429 (prosecutor's willingness to accept minorities on the jury is a valid consideration in determining whether she violated Batson ); Palmer v. Estelle, 985 F.2d 456, 458 (9th Cir.) (same), cert. denied, --- U.S. ----, 113 S.Ct. 3051 (1993). The district court did not clearly err in determining that the Government's peremptory challenge was not racially motivated.
 
 II
 
 6
 Benyamen argues that the district court erred by excluding expert testimony regarding the reliability of eyewitness identification. Benyamen's defense was that he was attempting to enter the United States illegally with the help of a man named Alhaji Bellow and did not know that heroin was hidden in his suitcases. Benyamen claimed that Bellow advised him to pose as a businessman to get into the United States and gave him business documents to support his cover. One of the business documents was a letter from Gabel Cosmetics signed by Ernest Gabel. During cross-examination by opposing counsel, Benyamen testified that he had never been to Gabel Cosmetics nor personally received any business documents from its owner Ernest Gabel.
 
 
 7
 To impeach Benyamen's testimony, the Government called Ernest Gabel, who is white, to testify that Benyamen came to his factory, identified himself as a businessman named Joseph Y. Benjamin, and obtained the letter eventually found in Benyamen's possession. Benyamen insisted that Gabel's identification was mistaken and requested funds to hire an expert to testify regarding the unreliability of eyewitness identification, particularly cross-racial identifications. The court refused to authorize the funds or to allow the expert to testify.
 
 
 8
 Benyamen argues that Daubert v. Merrell Dow Pharmaceuticals, Inc., --- U.S. ----, 113 S.Ct. 2786 (1993), decided after his conviction, disapproved this court's tradition of permitting the trial court in its discretion to determine whether such testimony should be admitted. See, e.g., United States v. Miranda, 986 F.2d 1283, 1285 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2393 (1993); United States v. Amaral, 488 F.2d 1148, 1153. However, in United States v. Rincon, 28 F.3d 921, 925 (9th Cir.1994), we upheld the exclusion of expert testimony regarding eyewitness identification and stated that "Daubert in no way altered the discretion that resides with the district court judge to determine whether such evidence is properly admitted."
 
 
 9
 Benyamen maintains that we must at least remand to the district court for further hearings in light of Daubert. Although Daubert altered the "general acceptance" theory as set forth in Frye v. United States, 293 F.2d 1013 (D.C.Cir.1923), the district court's decision to exclude the expert testimony did not rest on the Frye standard. The district court expressly and repeatedly recognized that it had the discretion to admit the testimony but excluded the testimony because it would not "be helpful to the jury in deciding the issues in this case." Whether expert testimony would assist the trier of fact is the central inquiry in determining whether the testimony should be admitted under Daubert. Daubert, 113 S.Ct. at 2796. That was, indeed, the district court's focus. The jury had all the facts about the encounter--particularly the claimed lengthy face-to-face meeting and the letter. The district court noted that Benyamen's attorney could discuss in his closing statement the various factors that might render Gabel's identification of Benyamen suspect. The district court's decision was not an abuse of discretion.
 
 III
 
 10
 To corroborate his claim that his motive for entering the country was to remain here illegally and not to import heroin, Benyamen called his sister Ayesha Benyamen and his friend Alhaji Ali Mohammed as witnesses. During their testimony, the district court sustained several hearsay objections made by the Government. Although Benyamen is correct that not all of the excluded statements were hearsay, this court reverses a district court's erroneous evidentiary rulings only if they more likely than not affected the verdict. U.S. v. Faust, 850 F.2d 575, 585 (9th Cir.1988). The excluded statements all sought to establish Benyamen's motive for coming to the United States and Bellow's role in helping him, factors that Benyamen explained at length in his testimony. Any error in excluding portions of Ali's and Ayesha's testimony was therefore harmless.
 
 
 11
 The conviction is affirmed.
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Moss disclosed during voir dire that her father was an alcoholic and that her brother abused alcohol and cocaine but was "okay" now. Moss later approached the court in a sidebar and confided that her brother had been arrested for cocaine possession, served about two months in prison, and was ordered by the court to attend drug rehabilitation