**UNITED STATES, Plaintiff,**

v.

**Robin SAYA, Robbie Sylva, Frank Burke, Defendants.**

**Criminal No. 95–01065 ACK.**

United States District Court,
D. Hawai'i.

Dec. 12, 1996.

***ORDER DENYING DEFENDANT ROBBIE SYLVA'S PROFFER OF EXPERT TESTIMONY FOR FAILURE TO MEET THE DAUBERT STANDARD***

KAY, Chief Judge.

### *BACKGROUND*

On December 4, 1996, this Court held a *Daubert* hearing on whether Robbie Sylva's ("Defendant") expert, Dr. George Bussey, ("Dr. Bussey") should be allowed to testify "concerning the effects of prolonged and active polysubstance by chief government witness" Alfredo Bunag ("Bunag"). *See* Defendant's Memorandum In Support of Admission of Expert Testimony Concerning Effects of Prolonged and Active Polysubstance Abuse under the *Daubert* Standard ("Memorandum"). In particular, Dr. Bussey intended to testify how Bunag's polysubstance abuse with particular concentration on his crystal methamphetamine use

affects Bunag's "ability to remember, relate, and distinguish historical events." *See* Memorandum at pg. 2.

At the hearing, the Court heard testimony from Dr. Bussey and the government's expert witness, Dr. William Frees Haning III ("Dr. Haning"). On December 6, 1996, both parties filed their closing arguments with the Court.

### STANDARD

Before a party can admit expert testimony, it must prove by a preponderance of the evidence that: (1) the expert's testimony will concern "scientific knowledge"; and (2) the scientific knowledge will assist the trier of fact to understand or determine a fact in issue. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993); *see also United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994).

For testimony to concern scientific knowledge, " 'general acceptance' is not a necessary condition." *Lust v. Merrell Dow Pharmaceuticals*, 89 F.3d 594, 597 (9th Cir.1996). Instead, "[w]hether a theory or technique constitutes 'scientific knowledge,' includ[es]: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the particular degree of acceptance within the scientific community. The list is not exhaustive. Nor did the Court presume to set out a definitive checklist or test.' " *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir.1994) (citations omitted)

Under *Daubert*, moreover, if a party objects and "raises a material dispute as to the admissibility of expert scientific evidence, the district court must hold an in limine hearing (a so-called *Daubert* hearing) to consider the conflicting evidence and make findings about the soundness and reliability of the methodology employed by the scientific experts." *Daubert v. Merrell Dow*, 43 F.3d 1311, 1318 fn. 10 (1995).

### DISCUSSION

The Court will analyze each tenet of *Daubert* separately.

### I. *Scientific Knowledge*

 The opinions Dr. Bussey intended to testify to do not fulfill any of the factors enunciated in *Daubert*. First, Dr. Bussey's opinion is not supported by scientific methodology and procedures. Dr. Bussey never conducted a direct psychological examination of Bunag. Nor did Dr. Bussey conduct neuropsychologic testing on Bunag which would have involved corroborating Bunag's memory with other reliable sources. Dr. Bussey did not even witness Bunag's testimony in this case nor listen to recordings of his pre-arrest conversations nor read any transcripts of his testimony. Rather, Dr. Bussey planned to base his testimony on an affidavit containing hearsay accounts of Bunag's drug use by four unknown "witnesses." The affidavit did not even suggest the amount of polysubstance abuse other than with respect to ice. Not only is such evidence inherently unreliable; but, as Dr. Bussey admitted, it is a methodology unendorsed by any scientific survey, literature or publication. In fact, Dr. Haning went so far to say that experts in the field could not reasonably rely on such testimony to render an opinion. Accordingly, the Court finds that Dr. Bussey employed unreliable methodology in forming his expert opinion.

Assuming Dr. Bussey's methodology was accurate, moreover, Dr. Bussey failed to cite with particularity any articles supporting his underlying thesis: that prolonged crystal methamphetamine use has any effect on memory. The government's witness, Dr. Haning, explained this omission by testifying that there is no literature at present which holds that methamphetamine use has any effect on memory. Accordingly, the Defendant also failed to establish that Dr. Bussey's theory or technique has been subjected to peer review and publication.[1]

---

1. The Court notes that Dr. Bussey himself has never published an article on this topic and apparently has done no research on the issue other than treating 30–35 patients for methamphetamine addiction.

Even if methamphetamine use did affect one's memory, both expert witnesses testified that a number of individual variables such as stress, intellect, varying tolerances to the drug and other health factors must be considered before truly determining the effects of the drug. Here, Dr. Bussey knows nothing about Bunag's individual characteristics. Accordingly, without some consideration of Bunag's characteristics, Dr. Bussey's opinion would be unreliable. Moreover, Dr. Haning testified that the predictability of the impact of sustained usage of ice is not reliable.

The presence of individual characteristics goes to another factor in *Daubert*: the known or potential rate of error. Defendant, however, put forward no evidence on the rate of error in predicting the effects of crystal methamphetamine on memory loss.

In sum, all the Defendant has put forward is Dr. Bussey's own testimony concerning the reliability of his opinion. However, "bald assurances of validity" simply do not suffice for *Daubert*. *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1315 (9th Cir. 1995). Accordingly, upon consideration of the *Daubert* standard, the testimony proffered at the hearing, the briefs filed on this issue, and the testimony of Alfredo Bunag already elicited at trial, this Court finds that the Dr. Bussey's testimony does not concern scientific knowledge for purposes of *Daubert*.

II. *Even if Dr. Bussey's testimony did concern "scientific knowledge", it would not aid the trier of fact*

■ The second tenet of *Daubert* is that the testimony must aid the trier of fact. In this case, however, the jury has had ample opportunity to evaluate the memory and credibility of Bunag. Thus far, Bunag has spent three full days testifying before the jury. For two of those days, Bunag was aggressively cross-examined on his drug use, his ability to remember things, and about particular conversations and meetings he had over a year ago. Moreover, the jury has been able to compare Bunag's testimony with over eight hours of pre-arrest tapes of Bunag's conversations.[2] These tapes concern many details of his testimony and could expose Bunag's purported inability to remember. If this was not enough, Defendant plans on bringing Bunag back in his case-in-chief and the government has indicated that they may bring him back for their rebuttal. Between the testimony that has already occurred, the tapes played of Bunag, and Bunag's future testimony, the jury will have over 30 hours in which to evaluate Bunag's memory and credibility. Accordingly, the Court finds that Dr. Bussey's further testimony will not aid the trier of fact in determining whether Bunag has the capacity to "remember, relate and distinguish historical events."

■ Finally, the Court notes that the Defendant did not put forward, nor could the Court find, any Ninth Circuit case allowing expert testimony concerning the effect of drug use on a witness' ability to perceive and recall. In fact, in one case, the Ninth Circuit stated that such testimony "threatens to usurp the jury's function of determining guilt." *United States v. Rohrer*, 708 F.2d 429, 434 (9th Cir.1983). In this instance, the Court agrees with the Ninth Circuit's caveat. Confronted with an "expert," the Court fears that the jury would give undue deference to Dr. Bussey's testimony and forfeit their own role of determining credibility. Therefore, even if Dr. Bussey's testimony did fulfill *Daubert*, the Court would exclude it under Fed.R.Evid. § 403 because its probative value is substantially outweighed by the danger of unfair prejudice and confusion and the possibility that it would mislead the jury. The Court concludes that Dr. Bussey's proffered testimony is speculative and hypothetical. *See United States v. Bernard*, 625 F.2d 854 (9th Cir.1980); *United States v. Sierra*, 892 F.2d 84 (9th Cir.1989) (unpublished), *cert. denied*, 494 U.S. 1059, 110 S.Ct. 1533, 108 L.Ed.2d 772 (1990).

## CONCLUSION

For the foregoing reasons, the Court HOLDS that Defendant has failed to meet the *Daubert* standard for his proffered expert, Dr. George Bussey.

IT IS SO ORDERED.

---

2. Incidentally, it was the Defense that requested that the tapes of Mr. Bunag be played in full.