**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

MOHAMED AHMED HASSAN,

*Defendant - Appellant*.

No. 24-263

D.C. No.
3:23-cr-00208-
CAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted June 9, 2025
Pasadena, California

Filed July 22, 2025

Before: Richard R. Clifton, Sandra S. Ikuta, and Danielle J.
Forrest, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Criminal Law

The panel affirmed Mohamed Ahmed Hassan's bench-trial convictions on four counts of bank robbery.

All four robberies were caught on surveillance cameras. Hassan argued that the district court impermissibly relied on extrinsic evidence in violation of his Sixth Amendment right to a fair trial by comparing the video footage to his in-court appearance, descriptions of which were not introduced into the record. Rejecting this argument, the panel held that the trier of fact may properly identify a defendant by comparing his observable appearance to photographic representations of the culprit. The panel also held that the visual comparison made by the district court, along with other available information about the robber, was sufficient evidence of Hassan's guilt.

## COUNSEL

Daniel E. Zipp (argued), Ashley Kaino-Allen, and Carling Donovan, Assistant United States Attorneys; Tara K. McGrath, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Jessica J. Oliva (argued) and Nora L. Stephens, Attorneys; Benjamin P. Davis, Assistant Federal Public Defender; Federal Defenders of San Diego Inc., San Diego, California; for Defendant-Appellant.

## OPINION

CLIFTON, Circuit Judge:

Mohamed Ahmed Hassan appeals from his bench-trial convictions on four counts of bank robbery, in violation of 18 U.S.C. § 2113(a). All four robberies were caught on surveillance cameras. We address today the narrow question of whether the Sixth Amendment's guarantee of a fair trial permits the trier of fact to compare photographs or video recordings of the culprit with the defendant's in-court appearance for identification purposes. For the reasons below, we hold that it does.

## I.  Background and Procedural History

This case arose from robberies of four Chase Bank branches that occurred in January 2022 in San Diego, California. The parties do not dispute that the same individual was responsible for all four incidents. Each incident unfolded in more or less the same manner. The robber entered the bank, approached a teller like a regular customer, demanded money after communicating that he had a weapon, received cash from the teller, and exited the bank. The robber took a total of approximately $15,400 from the four banks. The FBI arrested Hassan a few days after the fourth robbery. Pursuant to Hassan's waiver of the right to a jury trial, the district court held a bench trial.

The substantive elements of the crime are not at issue. From the beginning, the main issue in this case has been the identity of the robber. The prosecution relied on two categories of evidence at trial to prove that Hassan was the robber. First, the prosecution presented footage from surveillance cameras that had recorded all four robberies from various angles. The footage showed that for three out of the four robberies (the first, third, and fourth), the robber was wearing a face mask and a brimmed hat or fedora, thus concealing most of his facial features. During the second robbery, the robber revealed more of his face because he was not wearing a hat, although the mask still covered his mouth and part of his nose.[1] The prosecution argued in closing that Hassan, who was physically present in the courtroom before the district judge during the trial, was the same individual as the robber shown in the surveillance footage.

Second, the prosecution presented rideshare and cell phone records. The robber used Uber and Lyft, respectively, to transport himself to and from the banks for the first and third robberies. Uber's business records showed that an account associated with the name Mohamed Hassan had requested a roundtrip ride to the first bank, with the pickup location at an address on Pulitzer Place. The Lyft ride was similarly requested by a user named Mohamed Hassan. The Pulitzer Place address was linked to a cell phone registered under the name Mohamed Ahmed Hassan. Cell site location information demonstrated that the cell phone was near three of the banks around the times of their respective robberies.

---

[1] Wearing a face mask in public, even in a bank, was not as unusual in January 2022, in light of the COVID-19 pandemic, as it might have been at other times. The evidence in the record shows other people wearing masks, including both customers and employees of Chase Bank.

Beyond establishing the robber's name, the prosecution did not introduce further evidence that the defendant Hassan used that cell phone or requested the rideshare services.

The prosecution called several witnesses who had interacted with the robber, including the four bank tellers approached by the robber and the two rideshare drivers. The Uber driver testified that he picked up his passenger from the Pulitzer Place address, that he recalled his passenger's name to be Mohamed, and that he drove the passenger back and forth from the shopping center where the first robbery occurred. The Lyft driver testified that she called the police after she saw news coverage showing her passenger, named Mohamed, as the bank robber. None of the witnesses identified the defendant sitting in the courtroom as the robber.

Acting as the trier of fact, the district court found Hassan guilty on all four counts of bank robbery. The district court expressly declined to rely on the rideshare accounts, home address, and cell phone data, because in its view the prosecution never tied this evidence to the defendant. Relying "solely" on the video footage, the district court concluded that the prosecution met its burden to show that Hassan was the individual in each and every one of the four robberies. The district court entered a final judgment, including a 96-month sentence, and Hassan timely appealed.

## II. Discussion

Hassan raises two issues on appeal. First, Hassan argues that the district court impermissibly relied on extrinsic evidence in violation of his Sixth Amendment right by comparing the video footage to his in-court appearance, descriptions of which were not introduced into the record.

Second, and in the alternative, Hassan argues that the evidence was insufficient to support his conviction.

We are not persuaded. We conclude that the trier of fact may properly identify a defendant by comparing his observable appearance to photographic representations of the culprit. The visual comparison made by the district court, along with other available information about the robber, was sufficient evidence of Hassan's guilt. We affirm.

## A.  Extrinsic Evidence

We review de novo alleged violations of the Sixth Amendment. *See United States v. Saya*, 247 F.3d 929, 937 (9th Cir. 2001). The Sixth Amendment guarantees "the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 473 (1965). This right to a fair trial entails that "a jury's verdict must be based upon the evidence developed at the trial." *Id.* at 472 (internal quotation marks omitted). We have thus held that "[e]vidence not presented at trial, acquired through out-of-court experiments or otherwise, is deemed 'extrinsic.'" *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1991). A new trial is warranted if there is "a reasonable possibility that the extrinsic material *could* have affected the verdict." *Dickson v. Sullivan*, 849 F.2d 403, 405 (9th Cir. 1988) (quoting *Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987)).

We have not squarely addressed whether the factfinder's consideration of the defendant's physical appearance in court is extrinsic evidence, but our precedents suggest that it is not. In *United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994), we held that the district court did not err in allowing the jury to view the defendant next to a surveillance photograph after jury deliberations had begun. *Id.* at 926.

This arrangement did not implicate extrinsic evidence "because all the evidence at issue, the surveillance photograph and Rincon himself, were presented to the jury during the trial prior to deliberations." *Id.* We clarified what it meant for Rincon's appearance to be "presented": not only did two witnesses identify him in court, but Rincon also displayed himself before the jury as his defense. *Id.* Because it would have been permissible for the jury to compare the surveillance photograph to a photograph of Rincon, the jury could conduct what was effectively an equivalent comparison by observing Rincon in person. *Id.* at 927. Indeed, the jury "had to look at Rincon as well as the surveillance photograph" for identification purposes. *Id.*

Hassan was similarly present during his trial and displayed himself before the district judge acting as the trier of fact. *Rincon*'s logic commits us to the conclusion that the district court did not rely on extrinsic evidence by observing Hassan in person and comparing his appearance with the robber in the surveillance video footage. The very point of evidence like the video footage presumes such a comparison.

Other precedents further demonstrate that we have long accepted the task of visual identification properly lies within the province of the factfinder. *See United States v. Holmes*, 229 F.3d 782, 789 (9th Cir. 2000) ("The jury also examined the surveillance photographs that were admitted into evidence and were able to compare them to the defendant's appearance in court . . . ."); *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993) ("The jury, after all, was able to view the surveillance photos of LaPierre and make an independent determination whether it believed that the individual pictured in the photos was in fact LaPierre."); *United States v. Domina*, 784 F.2d 1361, 1371 (9th Cir. 1986) ("[T]he jury was able . . . to compare [defendant's]

appearance to that of the person in the surveillance photos."); *United States v. Barrett*, 703 F.2d 1076, 1082 (9th Cir. 1983) ("The Government's considerable identification evidence included . . . surveillance photographs of the robber for the jury to examine and compare with . . . Barrett's physical appearance at trial[.]"). Our holding today thus affirms what was already implicit in our caselaw: the trier of fact may compare a criminal defendant's in-court appearance with photographic or video evidence of the culprit's identity.

Hassan resists this conclusion by arguing that the defendant's physical appearance must be formally introduced into the record via, for example, witness identification or verbal descriptions; otherwise, it is extrinsic. Such an overbroad conception of extrinsic evidence would sweep in even factors like courtroom demeanor, tone of voice, and body language, all of which are routine considerations for the jury. *See, e.g.*, *United States v. de Jesus-Casteneda*, 705 F.3d 1117, 1121 (9th Cir. 2013); *United States v. Yida*, 498 F.3d 945, 950–51 (9th Cir. 2007). In this case, identity was the key issue from the beginning. Hassan knew that the prosecution would present the surveillance video footage. Represented by counsel, Hassan was able to cross-examine the prosecution's witnesses and ask them questions about the robber's looks. We are unpersuaded that Hassan was deprived of the safeguards of "a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner*, 379 U.S. at 473.

## B. Sufficiency of the Evidence

We follow a two-step inquiry when considering a challenge to a conviction based on sufficiency of the evidence. First, we "must consider the evidence presented at

trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). This means that we must resolve all possible conflicting inferences, including those that do not appear in the record, in the prosecution's favor. *Id.* Second, we "must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see United States v. Doe*, 136 F.3d 631, 636 (9th Cir. 1998) (applying the same two-step inquiry to bench trials). We may affirm on grounds not relied upon by the district court so long as the defendant has not been prejudiced. *See Doe*, 136 F.3d at 636 & n.11.

"Identification of the defendant as the person who committed the charged crime is always an essential element which the government must establish beyond a reasonable doubt." *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995). A witness's in-court identification is not necessary; "[i]dentification can be inferred from all the facts and circumstances that are in evidence." *Id.* (quoting *United States v. Weed*, 689 F.2d 752, 754 (7th Cir. 1982)). We conclude that sufficient evidence supported Hassan's identity as the robber, the only element challenged by Hassan on appeal.

At step one of our review, we choose to begin by considering the rideshare and cell phone records. While the district court explicitly disavowed any reliance on this evidence, we are not so inclined. The account name associated with the rideshare services is material to our inquiry; it increases the likelihood that the defendant committed the robberies because it tends to demonstrate that the robber's name was Mohamed Hassan. The Uber driver

testified that he drove a rider who used the name Mohamed from the home address registered under the cell phone to the location of the first bank robbery. The Lyft driver similarly testified that she recalled her rider's name to be Mohamed and that she identified Mohamed as the robber after seeing news coverage of the third bank robbery. The name and home address registered under the cell phone, which location data indicates was likely the phone carried by the robber, further corroborates the robber's identity as Mohamed Hassan. Viewed most favorably to the prosecution, the records establish that the robber and the defendant shared the same name.[2]

We next consider the surveillance footage. While the robber's face was mostly concealed during the first, third, and fourth robberies, the footage from the second robbery revealed much of the robber's face, which was covered only by a mask placed at or just below the tip of the nose. In addition, the robber's stature, build, and gait were visible from multiple angles. The district court's findings did not provide any detailed observations of Hassan's physical features. We acknowledge that we have not observed Hassan over many hours in the courtroom during trial as did the district court. We nonetheless presume, as we must, that Hassan, as he was displayed in the courtroom, strongly resembled the visible parts of the robber's face as well as other identifiable traits.

---

[2] Hassan also contends that his name was never properly established during trial. This argument is meritless, if only because the defendant's attorneys themselves introduced the defendant by his name on the record and never denied that identification throughout the trial. *See Alexander*, 48 F.3d at 1490.

Proceeding to step two, we ask whether this visual resemblance, in combination with the identity of Hassan's full name, was enough for *any* rational trier of fact to dispense with reasonable doubt. It was. This was not one of those "rare occasions" where the conviction rests on "mere speculation" or there is a "total failure of proof." *Nevils*, 598 F.3d at 1167 (internal quotation marks omitted). It is not uncommon for a reviewing court to "uph[o]ld the sufficiency of the trial evidence where the jury's opportunity to compare the defendant's in-court appearance with that of a person in a video or photograph constituted the principal, if not the sole, evidence supporting the verdict." *See Washington v. Sutton*, No. ED CV-18-0061-SVW(E), 2018 WL 6118548, at *11 (C.D. Cal. July 17, 2018), *report and recommendation adopted*, 2019 WL 404170 (C.D. Cal. Jan. 28, 2019) (collecting cases). We cannot characterize the district court's determination as irrational.

## III. Conclusion

The district court did not rely on extrinsic evidence to identify Hassan as the culprit, and sufficient evidence supported that finding. We therefore affirm the judgment of conviction on all counts.

**AFFIRMED.**